No. 914

First Circuit

## CHAMBERLAIN v. HILLYER-DEUTSCH-EDWARDS, INC.

(February 8, 1932.   Opinion and Decree.)
(March 8, 1932.   Rehearing Refused.)

Julius T. Long, of Shreveport, attorney for plaintiff, appellant.

Thornton, Gist & Richey, of Alexandria, attorneys for defendant, appellee.

MOUTON, J.  It is alleged by plaintiff that while throwing pieces of wood to be used for fuel in an engine operating a skidder for defendant company a piece of wood fell back, striking him in the abdomen, bruising, impairing the tissues, tearing the ligaments, nerves, muscles, and

tissues in that area, causing a hernia or rupture, and incapacitating him from doing work of any reasonable character.

He is demanding $8.77 weekly compensation, not to exceed 400 weeks.

His demand was rejected, and he appeals.

Plaintiff averred that he was injured on June 21, 1930, and so testified, also some of his witnesses, that the accident occurred on that date.

It may be stated here, at the outset, that plaintiff worked with defendant company up to the noon hour of May 30, 1930; that he never worked for the company thereafter, from which it follows that if he was injured, as he alleges, the accident occurred on May 30, 1930. In connection with the above statement, it is proper to state that plaintiff went to work for defendant company on May 21, 1930, was then examined by Dr. Cather, physician for the company, and that he had no hernia or rupture at that time.

The case being cleared of all doubts on the foregoing point, we shall now proceed to the decision of the vital controverted issue involved herein, which is as to whether plaintiff suffered the rupture complained of in his petition.

Plaintiff was pitching slabs or pieces of wood on a skidder May 30, 1930, with Evans and Soileau, two fellow workmen. Durant was fireman on the skidder and threw these slabs in the engine to operate the skidder.

Plaintiff says he was pitching wood on the skidder; that he had put a piece of hardwood weighing about fifteen or twenty pounds on top of the pile and that it fell at a distance of about ten feet from the skidder on the right side of his abdomen inflicting the injury of which he complains. Plaintiff fixes the time of the accident at about twenty minutes before noon, and says he continued to work until twelve o'clock, and then laid under a tank. He ate his dinner; that he quit work at noon; that he told Winchester, foreman of the skidder, and to others, that he had quit. Plaintiff claims that when he was injured Evans and Soileau, who were assisting him in putting wood on the skidder, were then in the woods fighting a fire, and were not present. At the time he claims the accident happened, Durant, the fireman, was on the skidder only eight or ten feet from where plaintiff was pitching the wood, and Ellis, with Seamen, two drum fullers, were also not over eight or ten feet from him.

Not one of these three fellow workmen saw the accident or had the slightest idea that it had happened, so they testified. Plaintiff said nothing to them, continued to work until noon, laid under a tank awhile, and then took his dinner. He showed neither by word nor act that he had been injured. According to his testimony, a piece of hardwood, weighing fifteen or twenty pounds, fell from a height of ten feet on his side, and according to his allegations "striking him heavily in the lower right part of his abdomen thereby tearing, bruising and seriously and permanently injuring and impairing the tissues, ligaments and muscles and nerves in that area, etc." If he had received such a blow from a piece of wood of that weight falling from such a distance from a higher level, we have no doubt that there would have resulted the tearing of the ligaments, muscles, and nerves, as averred by him, and which could not have been called an exaggeration.

It seems a little singular that these three fellow workmen did not see the accident, but it is still more remarkable, if it occurred, that plaintiff did not give the slightest manifestation, by word or by

action, that he had been so severely injured and, without making any complaint whatsoever, placidly continued to work up to twelve o'clock, laid awhile under a tank, and proceeded to take his dinner. It seems to us from the character of the accident, as described in plaintiff's testimony, and as alleged in his petition, the suffering he experienced must have been extremely painful, if not intense, and that there would have been some manifestation of his condition by complaint or other communication with his three fellow workmen around the skidder.

The proof also shows that his two companions, Evans and Soileau, returned about noon from the woods where they had been fighting the fire to the skidder on which they were engaged with plaintiff to pitch wood. Strange again to say, that plaintiff told them nothing of the accident. More than that, it appears that the skidder crew consisted of eight men, and that plaintiff failed to mention the accident he claims to have suffered to any member of this crew excepting Loyd Lasha, a friend and neighbor, to whom he says he spoke about the injury. The reason he advances for not speaking about it to these members of the crew is that he was "ashamed" to talk about an injury of that character.

Counsel for plaintiff says in his brief that he knows of but few persons that have hernias who are not "ashamed" of it, "and do not dislike the general public to know it."

If a person knows he is so afflicted, it is probable, that he would dislike for others to know it, and would not say anything about his trouble. Such a feeling might come to a man who knows that he has suffered a rupture. In this case, however, if plaintiff was struck as he claims, when the accident occurred, he did not know it had resulted in a hernia, as clearly appears from his evidence. It seems to us that when the accident happened, or soon thereafter, if it occurred, plaintiff not knowing then that he had suffered a hernia, he could not have been "ashamed" to say to Durant, Ellis, and Seaman, who were a few feet from him, that he had been struck by a heavy piece of wood on his right side. He could not have been "ashamed" to make such a statement to his fellow workmen on the skidder. He had then nothing secret to divulge about a hernia or rupture, and nothing of which he could be ashamed to divulge.

The proof shows that, after quitting work at noon on May 30th, plaintiff rode in a car with Cummings to Oakdale, where he resided. On this trip it appears that he never said anything about his injury to Cummings. At that time it might be said plaintiff had realized he had been ruptured, and because of shame or timidity he had refrained from broaching the subject to Cummings, but it is hard to believe that, under the impulse which would have resulted from such an accident, he would have said nothing to his companions on the skidder, nor soon thereafter to any of the eight members of the skidder crew, with the exception of Loyd Lasha.

It occurs to us that if plaintiff had suffered an accident of that character he would, under the circumstances above stated, have communicated it to the workers on the skidder, to some other of its members, and would not have restricted the information to Lasha only. It seems to us that a man of the most timid disposition would not have been so reticent under such circumstances.

It is also shown that plaintiff did not give the faintest appearance of having been hurt on that occasion, and that he did not say to any one immediately after he claims to have been injured, excepting Lasha, that he had been hurt, nor to Mr.

Cummings, with whom he rode to Oakdale.

It is hardly believable, from the description given in plaintiff's petition, that he suffered no pains, if he experienced such an accident. It is even more remarkable that he did not manifest, in any way, that he had been so injured, either at the time, or soon after. If all that he said be true, he appears to be a man of extreme timidity and, at the same time, of unusual fortitude, a rare combination.

Lasha says plaintiff told him about the injury and showed him the bruised place on his right side. This took place, according to Lasha, a little after the noon hour, when plaintiff at the time had left his work.

Conly, another witness for plaintiff, says that plaintiff told him he had been hurt and had quit his job with defendant company, and showed him a blue spot on his right side. This statement by plaintiff to Conly was made, as far as deducible from the record, on the day when plaintiff claims to have been injured, when he was returning to his home.

Randle, testifying for plaintiff, makes a similar statement, saying it was made the day after the accident, and that plaintiff showed him a purple bruised spot, where he said he was hurt.

Richmond, another witness for plaintiff, says while he was at the house of plaintiff's father the morning after the accident to borrow a plow he went in; that plaintiff made the same exhibition of the injured spot and explained how he was hurt.

It seems rather singular that plaintiff would have no hesitancy in showing the bruised spot to his intimates, but was so timid or modest about it that he would not mention the subject to others and members of his crew, even before he had realized that he had been ruptured.

Counsel for plaintiff contends that the judgment of the lower court is grounded on inferences and presumptions which were permitted to overturn the positive testimony of reliable witnesses who testified for plaintiff. These inferences and presumptions referred to by counsel, if we properly appreciate his argument, were drawn by the court from the improbable account of the injury given by plaintiff; his failure to complain immediately thereafter to those who were working near him on the skidder; his silence in respect thereto after his alleged injury, with the exception of his disclosures to Lasha, one of the eight members of the crew; to his subsequent silence about the matter while riding to his home with Cummings.

For the reasons hereinabove given, we do not find that the trial judge was not justified in drawing these inferences and presumptions in passing on the probative value of the evidence referred to.

Counsel argues that such presumptions should not be allowed to outweigh the positive testimony of Lasha, Conly, Randle, and Richmond, to whom plaintiff stated he had been hurt, and exhibited the spot where he had received the injury.

There is, we must say, some merit in that contention, although we must also state that the account given by plaintiff of the alleged injury appears to us as being extremely improbable for the reason hereinabove given.

Counsel, in support of his contention that the positive testimony should be believed in preference to such inferences and presumptions, refers to a quotation from 10 R. C. L., sec. 194, Evidence, as follows:

"When a disinterested witness, who is in no way discredited by other evidence, testifies to a fact within the knowledge

of such witness, which is not in itself improbable or in conflict with other evidence, the witness is to be believed, and the facts so given are to be taken as legally established."

In order that we may make a correct application of that rule of evidence, it is proper to consider the quotation in two parts. Proceeding thus to apply it, it must be noted that the quotation begins with the words: "When a disinterested witness * * * testifies to a fact not itself improbable" the witness should be believed. Here it must not be forgotten that proof that the alleged accident occurred depends on the testimony of plaintiff, as no one else present at the time claims to have seen it, or then heard of its occurrence. The fact that any such accident occurred therefore rests altogether on the testimony of the plaintiff, who is unquestionably not "a disinterested witness," words which we find at the very beginning of the quotation. Such a fact testified to by a disinterested witness, the quotation further says, "which is not in itself improbable or in conflict with other evidence, etc." The fact that such an accident occurred, it must be observed, is extremely "improbable," for the reasons above given, unnecessary here to repeat.

In the application of that rule, it must be particularly noted that, after referring to a fact "not in itself improbable," the rule says "or in conflict with other evidence, etc." The quotation of the latter part of that rule affords here a crucial test for a proper application of the rule to the evidence in the case. In making that statement, we have reference to the testimony of Dr. Cather, who testified as a medical expert during the trial.

Dr. Cather testified that he made an examination of plaintiff on June 11, 1930; that he was then O. K., and had no hernia or rupture; that he remembered when he came into his office for an examination, but that he relied on the records of his office. The judge, in his written opinion, says Dr. Cather made a written report of that examination and signed it; that, although it was shown to him, he could not find it in the record.

If plaintiff had received such a lick on his abdomen from a heavy piece of hardwood, as testified by him, and which had caused the laceration to his internal ligaments, muscles, etc., as described in his petition, there can be no doubt that a hernia would have been easily detected, if it were not fully apparent, when Dr. Cather examined plaintiff on June 11, 1930, about ten days from the date of the alleged accident. Hence, there can be no doubt that plaintiff had no hernia on June 11th, and unquestionably did not suffer any on May 30, 1930. The finding of this medical expert is certainly "evidence" that plaintiff then had no hernia.

This brings us to that portion of the rule which, in referring to a fact sworn to by a disinterested witness, says, not "in conflict with other evidence." Obviously, the testimony of plaintiff that he had suffered this hernia on May 30, 1930, was directly in "conflict with the evidence" of Dr. Cather, which shows he could not have experienced a rupture at that time.

The witnesses, Lasha, Conly, Randle and Richmond, it is appropriate to state here, did not see the alleged accident, and testified only to the injured spot on plaintiff's side, and to the statement plaintiff had made to them in reference thereto. This evidence was only intended as corroborative of a fact which plaintiff had to establish, and which the record shows never existed. Even if such evidence could be considered otherwise than as of a confirmatory character it would, like that of plaintiff, be in "conflict with other evi-

dence," that is, the evidence of Dr. Cather. It is true that in an examination of plaintiff by Dr. Cather in August, 1930, therefore subsequent to his examination June 11, 1930, he found that plaintiff had a hernia. This does not in any way indicate that he had any trouble of that character in June, 1930, and much less in May, 1930, and is therefore of no consequence in the solution of this case.

Counsel for plaintiff quotes the following excerpt from an address of Lord Tomlin of England, delivered before the International Law Association, viz.:

"Facts are really more important than theory and that without a due consideration of them there is no justice at all."

In the large majority of cases brought up to this court on appeal, we find that a correct solution of the issues depends on a proper analysis of the facts, and that few are the cases that present for determination questions purely of law, except where technical issues are involved. This is the reason that we invariably give our closest attention to the facts of record. In the instant case, as usual, we have made an exhaustive study of the evidence and must say that, considering the issues from every angle, we have failed to find any error in the judgment under review.

Counsel for plaintiff has marshaled every fact and circumstance possible in support of his contentions, which he has presented with fervor and earnestness, with care and ability. In our desire to meet all of his contentions, we have, we regret to say, written an opinion much too long, but felt compelled to do so, that the contested question be fully considered and reviewed.

We find with the district judge that plaintiff has failed to prove his demand with the legal certainty required, and that it was correctly denied.